**UNITED STATES DISTRICT COURT**
**EASTREN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHARON FILES and JOAN FILES, individually, and on behalf of themselves and others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>LAMPERT'S GARAGE, LLC D/B/A LAMPERT'S GARAGE, KEITH CORONT, UPPER PROVIDENCE TOWNSHIP and MEDIA BOROUGH,<br>Defendants. | Case No. 26-cv-2324<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Sharon Files and Joan Files bring this class action on behalf of themselves and all others similarly situated against Lampert's Garage, LLC d/b/a Lampert's Garage, Keith Coront, Upper Providence Township, and Media Borough. Plaintiffs allege the following upon personal knowledge as to themselves and as to all other matters upon information and belief.

## I. INTRODUCTION

1. This class action relates to the reckless deprivation of persons' constitutional and other rights to property, notice, and a hearing in conjunction with the towing, impounding, and disposal of vehicles. Collectively, towing, impounding, and disposal are referred to as "towing services" herein, unless otherwise noted.

2. Lampert's Garage, LLC d/b/a Lampert's Garage and its sole principal, Keith Coront (collectively, "Lampert's"), provides towing services for localities including Defendants Upper Providence Township ("Upper Providence") and Media Borough ("Media")

3. When a locality or its agents tows, impounds, or disposes of a vehicle, it has various obligations under state law and federal constitutional law.

4. Among the obligations, a locality or its agent must provide the affected vehicles' operators, owners, lessees, lessors, and lienholders (hereinafter "owners," unless noted otherwise) with notice of the vehicle's removal, status, and location, as well as information on how a vehicle may be reclaimed.

5. Also, under Pennsylvania law, a locality or its agent must maintain towing service records for at least one year after all fines have been paid.

6. However, Lampert's, on behalf of its locality clients, did not properly prepare and send notices, nor afford opportunities for hearings, nor properly maintain towing records, for vehicles Lampert's towed for its locality clients, including Defendants Upper Providence and Media, as well as others.

7. Multiple localities, including Defendants Upper Providence and Media, as well as others in Delaware County, used Lampert's as a towing agent. During this time, Lampert's never sent any notices of any kind to owners of vehicles that Lampert's towed, impounded, or disposed of at any locality's behest. Similarly, each locality did not properly send notices to vehicle owners, either. Finally, Lampert's and its clients, including Upper Providence and Media, failed to properly maintain towing records. Lampert's followed the same deficient towing practices for all of its locality clients.

8. Hundreds of persons had their vehicles towed, impounded, or disposed of by Lampert's on behalf of the Upper Providence and Media, as well as other localities. These persons did not receive proper notice of their vehicles' status or location, nor information on how to reclaim their vehicles, nor an opportunity to appear to dispute or otherwise reclaim their vehicles. Many

vehicles also were disposed of (e.g., sold for scrap or otherwise) by Lampert's without notice, a hearing, or compensation.

9. Lampert's—on its own and/or at the direction of its locality clients including Upper Providence and Media—wrongly towed, impounded, and disposed of numerous vehicles, without providing the most fundamental irreducible Due Process protections of notice and a hearing.

10. Compounding this shocking and blatant conduct, Lampert's wrongly disposed of vehicles that it towed on behalf of its locality clients including Upper Providence and Media that were wrongly towed and impounded without notice and a hearing. Defendants unjustly profited on this illicit practice to the extent vehicles were sold without recompense to affected vehicles' owners.

11. Plaintiffs bring this action on behalf of themselves and other persons similarly situated for injunctive, declaratory, and monetary relief because Lampert's common course of conduct on behalf of it locality clients constitutes violations of Plaintiffs' and other class members' state and federal constitutional rights and unjust enrichment under state law; Lampert's conduct additionally constitutes negligence and conversion under state law.

## II. <u>PARTIES</u>

12. Plaintiffs Sharon Files and Joan Files are citizens and residents of Delaware County, Pennsylvania.

13. Defendant Lampert's Garage, LLC d/b/a Lampert's Garage is a Pennsylvania limited liability company with its principal place of business and address at 408 W. Baltimore Avenue, Media, PA 19063. Its sole managing member is Defendant Keith Coront, an individual who on information and belief is a citizen of Pennsylvania and who resides in Delaware County. At all relevant times, Coront actively controlled directed, and participated in the towing services

rendered by Lampert's Garage, LLC d/b/a Lampert's Garage, such that the two were effectively one and the same. As used herein, "Lampert's" means both Defendant Lampert's Garage, LLC d/b/a/ Lampert's Garage and Defendant Coront, unless noted otherwise.

14. Defendant Upper Providence Township is a local governmental entity in the Commonwealth of Pennsylvania, with its principal place of business and address at 935 N. Providence Road, Media, PA 19063. As used herein, "Upper Providence" includes Defendant Upper Providence Township and its departments, employees, officials, offices, and agents, such as its local police department and towing agents.

15. Defendant Media Borough is a local governmental entity in the Commonwealth of Pennsylvania, with its principal place of business and address at 301 N. Jackson Street, Media, PA 19063. As used herein, "Media" includes Defendant Media Borough and its departments, employees, officials, offices, and agents, such as its local police department and towing agents.

## III. JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

17. This Court has personal jurisdiction over each Defendant because each is located within this District, conducts substantial business in this District, and the injuries alleged herein occurred in this District.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2) because each Defendant is located in this District, Plaintiffs reside in this District, and a substantial part of the events or omissions giving rise to this action occurred in this District.

## IV. FACTUAL BACKGROUND

### A. Overview of Pennsylvania Requirements for Towing, Impounding, and Disposal of Vehicles

19. One of the most basic tenets of Due Process is a person's right to notice and an opportunity to be heard. Unfortunately, Lampert's, acting under color of state law and as common towing agent for Upper Providence, Media and other localities, has denied these fundamental rights to dozens, if not hundreds, of individuals whose vehicles were towed, impounded, or disposed of by Lampert's on behalf of its locality clients.

20. Local governmental entities tow, impound, or dispose of vehicles for a variety of reasons.

21. For example, a local governmental unit, typically through its local police department and/or towing agent, may identify a vehicle within a locality's borders as potentially abandoned. *See, e.g.*, 75 Pa. C.S. §§ 7304, 7310. Similarly, persons may report to police vehicles that have been parked on their private property for more than 24 hours, or left at auto garage shops. *See, e.g.*, Pa. C.S. § 7311, 7311.1.

22. Other times, a local governmental unit, again typically through its local police department and/or towing agent, may tow or impound a vehicle in connection with a variety of related events, such as vehicle accidents (*see, e.g.*, 73 Pa. C.S. § 1971.3), alleged operation of a vehicle without a valid license (*see, e.g.*, 75 Pa. C.S. § 6309.2), alleged failure to pay fines (*see, e.g.*, 75 Pa. C.S. §§ 6309, 6309.1), or in connection with a variety of alleged motor vehicle driving violations including but not limited to if the owner is taken into custody and the vehicle is seized because it is alleged to be illegally parked.

23. Whatever the nature of the underlying event that led to a vehicle being towed, impounded, or deemed disposable, a local governmental unit, via its local police department and/or towing agent, must provide notice and an opportunity to be heard to the vehicle's owner.

24. For instance, if a person operates a vehicle without a license and her vehicle is impounded, the local police or towing agent must provide notice by the most expeditious means and by first class mail, proof of service, of the towing, storage, and location of the vehicle to the owner. *See* 75 Pa. C.S. § 6309(c). Vehicles must be released upon the payment of all applicable fines or costs. *See* 75 Pa. C.S. § 6309(d).

25. Similarly, in the case of vehicles deemed to be abandoned or unclaimed, multiple records must be created concerning the towing, impoundment, and disposal of vehicles. *See, e.g.*, 75 P.S. § 7303.1(a)-(b), 7304, 7304.1, § 7311, 7311.1. Certain of these records must be provided to the Pennsylvania Department of Transportation ("PennDOT"). *See, e.g.*, 75 Pa. C.S. § 7304. The submission of required records to PennDOT triggers a variety of obligations to provide notice to affected vehicles' owners by direct mail or publication. *See, e.g.*, 75 Pa. C.S. § 7305.

26. The importance of notice is not only procedural, but substantive and practical as well. Absent notice, vehicle owners lack the information necessary to understand what happened to their vehicles, where they are, and how they can be reclaimed.

27. Indeed, Pennsylvania law is explicit about what information must be included in notices sent to affected vehicle owners. That information, for example, includes: (i) the make, model, title number, vehicle registration plate number of the vehicle; (ii) the location of the police department that processed the vehicle; (iii) the location where the vehicle is being held; (iv) a statement apprising owners of their right to reclaim the vehicle and its contents within 30 days after the date the notice was mailed at the place where the vehicle is being held; (v) a statement

that failure to reclaim the vehicle and its contents could be deemed to be consent by the owner to the destruction, sale or other disposition of the abandoned vehicle and its contents and of all lienholders to dissolution of their liens; (vi) a statement that the owner, within 30 days of the mailing date of the notice, may request from the appropriate police department a copy of the abandoned vehicle information report and of their right to a hearing conforming to the state-law requirements. *See* 75 Pa. C.S. § 7305(b).

28. In the event a vehicle is not reclaimed, additional records must be generated before a vehicle is disposed, including additional notice. *See, e.g.*, 75 Pa. C.S. §§ 7307, 7309. Only then may a local governmental entity and/or its towing agent sell or otherwise dispose of a vehicle. *Id.* Sale or auction of a vehicle terminates owners' property rights (*see, e.g.*, 75 Pa. C.S. § 7309(d)), and the local governmental entity and/or its hired agent keeps all of the proceeds. However, any agent retained to sell or dispose of vehicles must possess of a salvor's license issued by PennDOT. *See, e.g.*, 75 Pa. C.S. § 7301.

29. Thus, when the required notice is not provided, vehicle owners are denied their procedural rights to understand the basic information about where their vehicles are, how long they might be kept there, how the vehicles might be reclaimed, that they have an opportunity to appear, etc. Similarly, when the appropriate records triggering notice are not created in the first place, vehicle owners are robbed of receiving any notice about their towed, impounded, or to-be-disposed vehicles. This, in turns, deprives vehicles owners of any opportunity to reclaim their vehicles, or to be heard to dispute the towing, impoundment, or disposal of their vehicles in the first place.

**B. Lampert's Common Wrongful Towing Practices**

30. Lampert's provided towing services for Upper Providence and Media, as well as other localities such as Brookhaven Borough, at least as early as January 2023.

31. Lampert's adhered to the same deficient practices for towing services that it provided to all of its locality clients, including Upper Providence, Media, and Brookhaven. That is, Lampert's engaged in the same wrongful towing practices, in the same wrongful manner, on behalf of each of its locality clients.

32. Lampert's does not possess, and has never possessed, a salvor's license. A salvor's license a state law prerequisite for properly disposing of towed vehicles.

33. Lampert's never followed Pennsylvania law for vehicles it towed.

34. Lampert's never completed the state-mandated paperwork that begins the process by which each of Lampert's locality clients must cause notice to be disseminated about the status of a towed vehicle, and the vehicle's potential disposition (e.g., sold for scrap, etc.).

35. Lampert's did not follow an appropriate policy, procedure, or practice for disposing of vehicles it towed for its locality clients.

36. Lampert's did not properly notify vehicle owners about the location and status of vehicles Lampert's towed on behalf of its locality clients.

37. Lampert's did not have any policy, procedure, or practice for communicating with each Locality about vehicles that Lampert's had towed and impounded on each locality client's behalf.

38. Lampert's did not have any policy, procedure, or practice for contacting or following up with vehicle owners prior to disposing of their vehicles.

39. Lampert's engaged in all of the above conduct as an active participant, in concert and under the direction or supervision of its locality clients.

40. None of Lampert's locality clients had a proper policy, procedure, or practice for what if anything Lampert's should do, by way of notice to owners or vehicle disposition, for vehicles that Lampert's towed.

41. For instance, if a towed vehicle was not retrieved after a few months—a period of time much longer than the much shorter periods required for notice by Pennsylvania law and each locality client's own ordinances—Lampert's would sell the vehicle for scrap or otherwise. Lampert's would do this without taking any formal steps to inform its locality client; without getting into contact with the vehicle owner; and without initiating the process mandated by Pennsylvania law for the disposition of vehicles. The latter is especially important because, as noted *supra* Part IV.A, Pennsylvania law requires both a tower (such as Lampert's) and a locality to complete paperwork to ensure notice is provided to vehicles' owners before a vehicle is deemed abandoned and disposed of.

42. Lampert's never completed any of the paperwork required by Pennsylvania law, such as PennDOT Forms MV-952s, prior to disposing of a vehicle that Lampert's had towed. As a result, notice mandated by state law was never provided to any owner of a vehicle that Lampert's towed on behalf of each of its locality clients.

43. Lampert's Garage and Coront, individually and together, actively and jointly participated with and/or at the direction of its locality clients when they improperly failed to send notices, maintain records, or otherwise comply with applicable laws, rules, and regulations pertaining to towing services and towed vehicles.

44. Lampert's and/or its locality clients, including Upper Providence and Media, profited on its sale of vehicles without initiating the notice process required by Pennsylvania law.

45. Lampert's purportedly has no records identifying the vehicles it towed or impounded on behalf of each locality client; no records about what happened to any of those vehicles; and no records of towed vehicles that Lampert's might have sold, when, and for how much.

46. Lampert's claims all of its records (if any) were destroyed in a "roof collapse." This Improbably, this purported event occurred the day after Plaintiffs' counsel submitted separate right-to-know requests to Upper Providence and Media and Brookhaven Borough for records about vehicles towed, including those towed by Lampert's.

47. Lampert's landlord, Buckeye Enterprises, made the decision to trash all of Lampert's towing records that were purportedly damaged during the "roof collapse." On information and belief, Buckeye Enterprises is co-owned by Media police sergeant Eric Gavin and his wife. On information and belief, every vehicle processed for towing in Media by Sgt. Gavin used Lampert's as the towing agent, despite Media's retaining multiple towing agents simultaneously.

**C. Upper Providence's Deprivation of Vehicle Owners' Rights**

48. Upper Providence, through its local police department, directs the towing, impoundment, and disposal of vehicles within Upper Providence's borders. Upper Providence must follow Pennsylvania law and regulations including but not limited to those concerning the towing, impoundment, and disposal of vehicles. *See generally*, *e.g.,* 73 Pa. C.S. § 1971.3l; 75 Pa. C.S. § 6309; 75 Pa. C.S. §§ 7301, *et seq.* Upper Providence also has implemented its own local ordinances about the towing, impoundment, and disposal of vehicles to comport with Pennsylvania law.

49. Lampert's has served as Upper Providence's towing agent since at least January 2019 to the present.

50. Neither Upper Providence nor Lampert's sent all of the required notices nor created all of the required records discussed *supra* Part IV.A for towed, impounded, or disposable vehicles.

51. Upper Providence never sent all of the notices under its own local ordinance(s) to vehicle owners about vehicles towed by Lampert's, nor provided any hearings in connection with such vehicles.

52. Upper Providence does not require vehicle owners to obtain release forms prior to vehicle retrieval from Lampert's. Upper Providence does not maintain, nor require Lampert's to maintain, records sufficient to know which vehicles were towed, when, and the status of each vehicle. This not only means the required records that should exist do not, but vehicles could be released by Lampert's without verification by Upper Providence, including to the wrong persons. On information and belief, this has in fact has happened with Lampert's.

53. Upper Providence possesses virtually no records showing which vehicles Lampert's towed for Upper Providence, when, and the status of each vehicle. The only records Upper Providence purports to possess are a few inventory search forms – which relate to inventories of personal items in seized vehicles, not the vehicles themselves – from about sixty days or so prior to a right-to-know request. According to Upper Providence, all other documents, if there ever were any, no longer exist. This lack of retention is inconsistent with Pennsylvania record or retention law, and on information and belief Upper Providence's own local ordinance(s) concerning same.

54. Not all owners of towed, impounded, and disposable vehicles received required notice about their vehicles, or an opportunity to be heard from Upper Providence or Lampert's.

**D. Media's Deprivation of Vehicle Owners' Rights**

55. Media, through its local police department, directs the towing, impoundment, and disposal of vehicles within Media's borders. Media must follow Pennsylvania law and regulations including but not limited to those concerning the towing, impoundment, and disposal of vehicles. *See generally*, *e.g.,* 73 Pa. C.S. § 1971.3l; 75 Pa. C.S. § 6309; 75 Pa. C.S. §§ 7301, *et seq.* Media also has implemented its own local ordinances about the towing, impoundment, and disposal of vehicles to comport with Pennsylvania law.

56. Lampert's has provided towing services to Media since at least June 2009 through the present.

57. Neither Media nor Lampert's sent all of the required notices nor created all of the required records discussed *supra* Part IV.A for vehicles that were towed, impounded, or disposed of by Lampert's.

58. Neither Media nor Lampert's ever sent all of the notices under its own local ordinance(s) to vehicle owners about vehicles towed by Lampert's, nor provided all of the hearings in connection with such vehicles.

59. Neither Media nor Lampert's possess all of the records that should show what happened to vehicles Lampert's towed at Media's behest. This lack of retention is inconsistent with Pennsylvania record or retention law, as well as Media's own local ordinance(s) concerning same.

60. Media used multiple towing agents for towing services at the same time it used Lampert's for towing services. These other towing agents, such as Luongo's and Keyes Towing of Media, appear to have processed the appropriate records on behalf of Media, none of which were ever generated by Lampert's. Thus, Media knew or should have known from its other towing

agents what Lampert's and Media itself should have done by way of paperwork to comply with Pennsylvania law about vehicles towed by Lampert's.

**V. Plaintiffs' Experience**

61. Plaintiffs are some of the many vehicle owners who were deprived notice and a hearing in connection with Lampert's improper towing services on behalf of its locality clients.

62. In 2024, Plaintiff Joan Files owned a Nissan Altima. Plaintiff Joan Files and her daughter, Plaintiff Sharon Files, drove this vehicle.

63. In 2024, Plaintiff Sharon Files was lawfully driving her vehicle and, while doing so, she was pulled over by the police who charged her with operating a vehicle without proper paperwork, and charged Plaintiff Joan Files for same.

64. On information and belief, the vehicle was towed by Lampert's to an indeterminant place. Lampert's did not provide any information to Plaintiffs.

65. On information and belief, Lampert's never processed the required records for the vehicle.

66. Neither Plaintiff Sharon Files nor Plaintiff Joan Files ever received any notice about the vehicle, such as where it was located, how they could reclaim it, whether and how they could dispute the towing and impoundment, or whether the vehicle was sold or otherwise disposed. Nor did either Plaintiff receive any notice about an opportunity to appear in connection with the towing and impoundment of the vehicle.

67. Plaintiff Sharon Files and Plaintiff Joan Files were not able to obtain, and were not provided, any information about their vehicle.

68. In the absence of any notice that should have been provided by Lampert's, as mandated by state law and local ordinance(s), Plaintiff Sharon Files and Plaintiff Joan Files have been left in limbo about the vehicle, the use of which they have been deprived of to this day.

69. Lampert's wrongful actions vis-à-vis its towing of Plaintiffs' vehicle is common and indicative of Lampert's identical practices for towing services it provided to all locality clients, including but not limited to Upper Providence and Media.

## VI. CLASS ALLEGATIONS

70. Plaintiffs bring this action both individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) against Lampert's, Upper Providence and Media on their own behalf and on behalf of the below class ("the Class"):

> All persons whose vehicles were towed, impounded, or disposed of by Lampert's on behalf of a Pennsylvania locality.

71. Excluded from the Class are (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendants and each of their employees, officers, directors, and agents; (c) Defendants' legal representatives, assigns and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

72. Plaintiffs reserve the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

73. Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

74. **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially dozens if not hundreds of persons. The Class is therefore so numerous that joinder of all members is impracticable.

75. **Commonality**: Common questions of law and fact exist as to all class members, including but not limited to:

a. Whether Lampert's had an obligation to properly process towed, impounded, or disposable vehicles, and the scope of that obligation;

b. Whether Lampert's created the records required by state or local law in connection with the towing, impoundment, or disposal of vehicles;

c. Whether Lampert's on behalf of its locality clients had an obligation to properly oversee towing services provided by Lampert's;

d. Whether Lampert's on behalf of its locality clients had an obligation to provide, or obligation to cause to be provided, notice and an opportunity to be heard in connection with the towing, impoundment, or disposal of vehicles;

e. Whether Lampert's on behalf of its locality clients provided, or caused to be provided, notice and an opportunity to be heard in connection with the towing, impoundment, or disposal of vehicles;

f. Whether Lampert's challenged conduct constitutes an unlawful policy, practice, procedure, or custom on behalf of its locality clients;

g. Whether Upper Providence's and Media's respective challenged conduct constitutes an unlawful policy, practice, procedure, or custom;

h. Whether Lampert's, Upper Providence, and Media each acted intentionally, with reckless indifference, or negligently, or in a way that shocks the conscience;

i. Whether Lampert's, Upper Providence's, and Media's challenged conduct constitutes a wrongful taking or seizure;

j. Whether Lampert's acted negligently;

k. Whether Lampert's wrongfully converted the vehicles or property of the Class;

l. Whether Lampert's, Upper Providence, and Media were unjust enriched by receiving monies for towed, impounded, or disposed of vehicles without providing notice and an opportunity to be heard;

m. Whether the challenged practices harmed Plaintiffs and other members of the Class; and

n. Whether Plaintiffs and other members of the Class are entitled to damages, restitution, equitable relief, declaratory relief, and/or injunctive relief.

76. **Typicality**: Plaintiffs' claims are typical of other class members' claims. Plaintiffs and other class members all suffered the same type of harm. Plaintiffs have substantially the same interest in this matter as all other class members, and Plaintiffs' claims arise out of the same set of facts and conduct as the claims of all other class members.

77. **Adequacy of Representation**: Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in class actions, consumer litigation, civil rights litigation, and federal court litigation. Accordingly, Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of other class members. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiffs have no disabling conflicts with other class members and will fairly and adequately represent the interests of class members.

78. The elements of Rule 23(b)(2) are met. Each Defendant has acted on grounds that apply generally to all class members so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole, and the Class is a cohesive group.

79. The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other class members have claims against each Defendant, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiffs' experienced counsel foresee little difficulty in the management of this case as a class action.

## VII. CAUSES OF ACTION

### Count I – Violation of Procedural Due Process Rights Under 42 U.S.C. § 1983 and Analogous State Law Against All Defendants

80. Plaintiffs incorporate by reference herein the ensuing paragraphs.

81. This claim is brought by Plaintiffs against each Defendant, on behalf of themselves and all similarly situated class members under 42 U.S.C. § 1983, and analogous state law.

82. Acting under color of state law, each Defendant intentionally, recklessly, and negligently failed to instruct or control its employees and agents in their duties with respect to the towing, impoundment, and disposal of vehicles, by failing to properly process vehicles and by failing to provide notice and an opportunity to be heard.

83. Each Defendant should have known, and upon information and belief did know, that it had an obligation under the Constitution and laws of the United States and the constitution and laws of the Commonwealth of Pennsylvania to provide notice and a hearing to Plaintiffs and

other class members in connection with the towing, impoundment, and disposal of vehicles.

84. Each Defendant failed to exercise diligence in the instruction, supervision, and control of its employees and agents as to towing, impoundment, and disposal of vehicles, and as to notice and an opportunity to be heard in connection with same. Each Defendant had the authority and ability to prevent the deprivation of due process rights and could have done so with reasonable diligence, but grossly and recklessly failed or refused to do so.

85. Each Defendant's wrongful conduct constitutes a policy, pattern, or practice that has had and has ongoing detrimental effects to Plaintiffs' and other class members' rights.

86. Each Defendant's conduct as alleged herein constitutes unlawful, deliberate, and wanton conduct, by and through its employees and agents, acting under color of state law.

87. Each Defendant's conduct as alleged herein constitutes a procedural due process violation insofar as the Class was denied procedures designed to protect their life, liberty, and property. Plaintiffs and each other class members had protected liberty or property interests in their vehicles (and items therein). There is no reasonable question that Plaintiffs and the Class were entitled to notice and a hearing.

88. As a direct and proximate result of the acts and omissions alleged herein, Plaintiffs and other class members have suffered a deprivation of constitutional and statutory rights guaranteed by the Fourteenth Amendment of the Constitution of the United States, the constitution of the Commonwealth of Pennsylvania, and the laws thereunder.

**Count II – Violation of Substantive Due Process Rights Under 42 U.S.C. § 1983 and Analogous State Law Against All Defendants**

89. Plaintiffs incorporate by reference herein the ensuing paragraphs.

90. This claim is brought by Plaintiffs against all Defendants, on behalf of themselves and all similarly situated class members under 42 U.S.C. § 1983, and analogous state law.

91. Acting under color of state law, each Defendant intentionally, recklessly, and negligently failed to instruct or control its employees and agents in their duties with respect to the towing, impoundment, and disposal of vehicles, by failing to properly process vehicles and by failing to provide notice and an opportunity to be heard.

92. Each Defendant should have known, and upon information and belief did know, that it had an obligation under the Constitution and laws of the United States and the constitution and laws of the Commonwealth of Pennsylvania to provide notice and a hearing to Plaintiffs and other class members in connection with the towing, impoundment, and disposal of vehicles.

93. Each Defendant failed to exercise diligence in the instruction, supervision, and control of its employees and agents as to towing, impoundment, and disposal of vehicles, and as to notice and an opportunity to be heard in connection with same. Each Defendant had the authority and ability to prevent the deprivation of due process rights and could have done so with reasonable diligence, but grossly and recklessly failed or refused to do so.

94. Each Defendant's wrongful conduct constitutes a policy, pattern, or practice that has had and has ongoing detrimental effects to Plaintiffs' and other class members' rights.

95. Each Defendant's conduct as alleged herein constitutes unlawful, deliberate, and wanton conduct, by and through its employees and agents, acting under color of state law.

96. Each Defendant's conduct as alleged herein constitutes a substantive due process violation insofar as there is no reasonable question that Plaintiffs and the Class were entitled to notice and a hearing, and to protect their liberty and property interests in their vehicles (and items therein). Each Defendant's blatant disregard for these rights shocks the conscience.

97. As a direct and proximate result of the acts and omissions alleged herein, Plaintiffs and other class members have suffered a deprivation of constitutional and statutory rights

guaranteed by the Fourteenth Amendment of the Constitution of the United States, the constitution of the Commonwealth of Pennsylvania, and the laws thereunder.

**Count III – Unlawful Taking and Seizure Under 42 U.S.C. § 1983 and Analogous State Law Against All Defendants**

98. Plaintiffs incorporate by reference herein the ensuing paragraphs.

99. This claim is brought by Plaintiffs against all Defendants, on behalf of themselves and all similarly situated class members under 42 U.S.C. § 1983, and analogous state law.

100. Acting under color of state law, each Defendant intentionally, recklessly, and negligently failed to instruct or control its employees and agents in their duties with respect to the towing, impoundment, and disposal of vehicles, by failing to properly process vehicles and by failing to provide notice and an opportunity to be heard.

101. Each Defendant should have known, and upon information and belief did know, that it had an obligation under the Constitution and laws of the United States and the constitution and laws of the Commonwealth of Pennsylvania to provide notice and a hearing to Plaintiffs and other class members in connection with the towing, impoundment, and disposal of vehicles.

102. Each Defendant should have known, and upon information and belief did know, that it had an obligation under the Constitution and laws of the United States and the constitution and laws of the Commonwealth of Pennsylvania to provide notice and a hearing to Plaintiffs and other class members in connection with the towing, impoundment, and disposal of vehicles.

103. Each Defendant failed to exercise diligence in the instruction, supervision, and control of its employees and agents as to towing, impoundment, and disposal of vehicles, and as to notice and an opportunity to be heard in connection with same. Each Defendant had the authority and ability to prevent the deprivation of rights and could have done so with reasonable diligence, but grossly and recklessly failed or refused to do so.

104. Each Defendant's wrongful conduct constitutes a policy, pattern, or practice that has had and has ongoing detrimental effects to Plaintiffs' and other class members' rights.

105. Each Defendant's conduct as alleged herein constitutes unlawful, deliberate, and wanton conduct, by and through its employees and agents, acting under color of state law.

106. Each Defendant's conduct as alleged herein constitutes an unlawful taking under the Fifth Amendment, as incorporated by the Fourteenth Amendment, insofar as each Defendant interfered with Plaintiffs' and other class members' liberty and property rights in their vehicles (and items therein) without proper procedure, notice, hearing, or compensation. To the extent applicable, each Defendant's conduct also constitutes a wrongful seizure under the Fourth Amendment, as incorporated by the Fourteenth Amendment, insofar as each Defendant interfered with Plaintiffs' and other class members' liberty and property rights in their vehicles (and items therein) without proper procedure, notice, hearing, or compensation.

107. As a direct and proximate result of the acts and omissions alleged herein, Plaintiffs and other class members have suffered a deprivation of constitutional and statutory rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States, the constitution of the Commonwealth of Pennsylvania, and the laws thereunder.

**Count IV – Unjust Enrichment Against All Defendants**

108. Plaintiffs incorporate by reference herein the ensuing paragraphs.

109. This claim is brought by Plaintiffs against all Defendants, on behalf of themselves and all similarly situated class members under 42 U.S.C. § 1983, and analogous state law.

110. Each Defendant unjustly benefited at the expense of Plaintiffs and other class members by virtue of each Defendant's interference with Plaintiffs' and other class members' possessory interest in their vehicles (and items therein) without notice or a hearing, and, as

applicable, the disposal of vehicles.

111. Lampert's and/or Upper Providence and Media were further unjustly enriched at the expense of Plaintiffs and other class members by compounding fines and costs for vehicles towed and impounded without proper notice and a hearing. By failing to provide notice and a hearing, vehicles which can and should have been reclaimed earlier remained in Lampert's and/or Upper Providence's or Media's possession, and fines paid to reclaim vehicles were higher than what the otherwise would have been.

112. Lampert's and/or Upper Providence and Media have profited unfairly at Plaintiffs' and other class members' expense. Lampert's and/or Upper Providence or Media obtained Plaintiffs' and other class members' vehicles and items therein – property – that they should not have been holding for the length of time or manner in which Lampert's and/or Upper Providence or Media held the vehicles (and items therein).

113. It would be inequitable and unconscionable for Lampert's and/or Upper Providence or Media to retain the benefit and profit obtained at Plaintiffs' and other class members' expense.

114. In the alternative to the other causes of actions alleged herein, Plaintiffs and other class members do not have an adequate remedy at law.

115. Plaintiffs and other class members are entitled to seek and do seek restitution from Lampert's as well as an order from this Court for the deprived value of the wrongly towed, impounded, or disposed of vehicles, and disgorgement or a constructive trust for all profits, benefits, and other compensation obtained by Lampert's and/or Upper Providence or Media by virtue of the wrongful conduct alleged herein.

**Count V – Negligence Against Lampert's**

116. Plaintiffs incorporates by reference herein the ensuing paragraphs.

117. Plaintiffs bring this claim on behalf of themselves and all similarly situated class members.

118. Lampert's had a duty to exercise reasonable care in the processing and handling of towed, impounded, or disposable vehicles, and the provision of notice and an opportunity to be heard in connection with same.

119. Lampert's intentionally, recklessly, and negligently failed to instruct or control its employees and agents of their duties with respect to the towing, impoundment, and disposal of vehicles, by failing to properly process vehicles and by failing to provide notice and an opportunity to be heard.

120. Lampert's should have known, and upon information and belief did know, that it had an obligation to comply with applicable law including the provision of notice on behalf of its locality clients including but not limited to Upper Providence and Media to Plaintiffs and other class members in connection with the towing, impoundment, and disposal of vehicles.

121. Lampert's failed to exercise diligence in the instruction, supervision, and control of its employees and agents as to towing, impoundment, and disposal of vehicles, and as to notice and an opportunity to be heard in connection with same. Lampert's had the authority and ability to prevent the deprivation of rights and interests and could have done so with reasonable diligence, but grossly and recklessly failed or refused to do so.

122. Lampert's wrongful conduct constitutes a policy, pattern, or practice that has had and has ongoing detrimental effects to Plaintiff's and other class members' rights.

123. Lampert's conduct as alleged herein constitutes unlawful, deliberate, and wanton conduct, by and through its employees and agents, acting under color of state law.

124. As a direct and proximate result of the acts and omissions alleged herein, Plaintiffs

and other class members have been injured.

**Count VI – Conversion Against Lampert's**

125. Plaintiffs incorporates by reference herein the ensuing paragraphs.

126. Plaintiffs bring this claim on behalf of themselves and all similarly situated class members.

127. Each class member had a possessory interest in their vehicle (and the items therein) at the time Lampert's towed their vehicle.

128. Lampert's failure to properly process and handle towed, impounded, or disposable vehicles amounts to an intentional or reckless deprivation or interference with each class member's possessory interest.

129. Lampert's intentional or reckless exercise dominion or control over each class member's vehicle (and items therein) without permission or consent, and such interference was not authorized by law. Indeed, as alleged herein, Lampert's did not comply with its obligations under the law as to the provision of towing services to locality clients.

130. Lampert's wrongful conduct constitutes a policy, pattern, or practice that has had and has ongoing detrimental effects to Plaintiffs' and other class members' rights.

131. Lampert's conduct as alleged herein constitutes unlawful, deliberate, and wanton conduct, by and through its employees and agents, acting under color of state law.

132. As a direct and proximate result of the acts and omissions alleged herein, Plaintiffs and other class members have been injured.

**Count VII – 42 U.S.C. § 1988**

133. Plaintiffs incorporate by referenced herein the ensuing paragraphs.

134. Lampert's, Upper Providence, and Media, as alleged herein, deprived Plaintiffs and

the Class of their life, liberty, or property, and procedures designed to protect same, without due process of law, under color of Pennsylvania law.

135. Plaintiffs, accordingly, is entitled to recover reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following judgment:

A. An order certifying this action as a class action;

B. An order appointing Plaintiffs as Class Representatives, and appointing undersigned counsel as Class Counsel to represent the Class;

C. A declaration that each Defendant violated the constitutional and related protections described herein.

D. An order awarding appropriate preliminary and/or final injunctive relief against the conduct of each Defendant described herein, both retroactive to provide notice and an opportunity to be heard for the Class as to vehicles previously towed, impounded, or disposed, and prospectively for future towing, impoundment, or disposal of vehicles.

E. Payment to Plaintiffs and class members of all damages, exemplary damages, punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including but not limited to the value of each Defendant's wrongful deprivation of vehicles and items therein as alleged herein.

F. An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class members;

G. Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

H. Such other and further relief as this Court may deem just, equitable, or proper.

**JURY DEMAND**

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

Dated: April 9, 2026

Respectfully Submitted,

*/s/ David J. Stanoch*

Ruben Honik
David J. Stanoch, Of Counsel
Honik LLC
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel: 267-435-1300
ruben@honiklaw.com
david@honiklaw.com