**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHARON FILES, JOAN FILES** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-2324** |
| | : | |
| **LAMPERT'S GARAGE, LLC, UPPER PROVIDENCE TOWNSHIP, MEDIA BOROUGH, KEITH CORONT** | : | |

**MURPHY, J.** **October 2, 2026**

# MEMORANDUM

Aggrieved plaintiffs may point the finger at more than one defendant, because sometimes, as Poirot discovered on the Orient Express, they all did it. But Poirot had his suspects snowbound while he solved the mystery. In federal court, plaintiffs must arrive with a plausible link to each defendant already in hand. Here, plaintiffs' car was towed and impounded by a private company working for Brookhaven Borough. Not only did plaintiffs sue the towing company and its owner, but they also sued two municipalities other than Brookhaven with no connection to the incident except that the municipalities also use the same towing company. Plaintiffs' theory is that, had these other two municipalities done a better job training and supervising the towing company generally, then the company would not have unlawfully towed and impounded plaintiffs' car in Brookhaven. That kind of speculative connection between the defendant's conduct and the plaintiff's injury is not enough to satisfy Article III's standing requirement. Accordingly, we dismiss the claims against the municipalities without prejudice for lack of subject matter jurisdiction.

## I. FACTUAL ALLEGATIONS

In 2024, Sharon Files was driving with her mother Joan Files in Joan's car when they

were pulled over for "operating a vehicle without proper paperwork." DI 1 ¶¶ 62-63.[1] Both were charged for that offense, and the vehicle was then towed by Lampert's Garage, LLC to "an indeterminant place." *Id.* ¶¶ 63-64. The Fileses say that they never received any notice about where the vehicle was taken, how they could reclaim it or contest its impoundment, or whether it was sold or otherwise disposed of. *Id.* ¶ 66.

The Fileses brought this lawsuit on behalf of themselves and a putative class of other vehicle owners against Lampert's, its owner, and two Pennsylvania municipalities — Upper Providence Township and Media Borough. DI 1 ¶¶ 12-15. The Fileses claim that all defendants violated their federal constitutional rights to due process and against unlawful takings. *Id.* ¶¶ 80-107. They also brought state law claims for unjust enrichment against all defendants and for negligence and conversion against Lampert's. *Id.* ¶¶ 108-32. The Fileses' complaint does not allege where the stop or towing was initiated, *see id.* ¶¶ 61-69, but in another lawsuit, they have alleged it was in Brookhaven Borough, PA, *see* Am. Compl., *Bradley v. Brookhaven Borough*, No. 2:25-cv-00155, DI 47 ¶¶ 80-81. The Fileses do not allege that Upper Providence or Media had any involvement with the towing of their car, but they have alleged that these municipalities employed Lampert's for towing services. DI 1 ¶¶ 49, 56.

## II. MOTIONS AT ISSUE

Media moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the Fileses lack Article III standing and that we accordingly lack jurisdiction. DI 13. Media argues that any injury alleged by the Fileses is not fairly traceable to its conduct, which undermines

---

[1] We draw the facts from plaintiffs' complaint, whose allegations we accept as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016).

standing. DI 13 at 7-8.[2] Upper Providence also moved to dismiss. DI 15. While its motion was for dismissal for failure to state a claim under Rule 12(b)(6), Upper Providence similarly argues that the Fileses have not alleged any causal connection between their injury and any action of Upper Providence. DI 15-1 at 4-7.

The Fileses oppose these motions, arguing that they plausibly alleged that their injuries are fairly traceable to Media and Upper Providence. DI 16 at 17-23. They argue that had Media and Upper Providence provided proper supervision, training, and discipline to Lampert's in its capacity as Media and Upper Providence's towing company, then Lampert's would have provided proper notice to the Fileses about how to reclaim their vehicle. *Id.* at 19-21. The Fileses do not dispute that they were pulled over and towed in Brookhaven, not Media or Upper Providence. *Id.* at 19.

## III. LEGAL STANDARDS

Under Rule 12(b)(1), we must grant a motion to dismiss if we lack subject-matter jurisdiction over a claim. If the plaintiff lacks Article III standing, we lack subject-matter jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). At the motion to dismiss stage, we assess standing by "apply[ing] the same standard of review we use when assessing a motion to dismiss for failure to state a claim." *Finkelman,* 810 F.3d at 194 (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). A plaintiff can thus survive a motion to dismiss for lack of standing where — putting aside any conclusory allegations — the complaint "allege[s] facts that affirmatively and plausibly suggest that [they] ha[ve] standing to sue." *Id.* (quoting *Amidax Trading Group v.*

[2] We adopt the sequential pagination of the CM/ECF docketing system.

*S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). We can also take judicial notice of the existence, but not the truth, of allegations in other litigation. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Ship. Group Ltd.*, 181 F.3d 410, 426-27 & n.7 (3d Cir. 1999).

Even absent a Rule 12(b)(1) motion, we must dismiss a claim for lack of subject matter jurisdiction on our own initiative before adjudicating merits issues raised in a 12(b)(6) motion. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 169 (2016); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Thus, where, as here, we dismiss for lack of jurisdiction, we need not evaluate the merits of a 12(b)(6) motion.

## IV. DISCUSSION

Article III of the Constitution limits federal court jurisdiction to "Cases" and "Controversies." For there to be a case or controversy, a plaintiff must have "standing" to sue. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To have standing, a plaintiff must demonstrate that (1) they have suffered an injury-in-fact that is (2) fairly traceable to the defendant's alleged conduct, and (3) redressable by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation modified).

Only the second element of standing, traceability, is at issue here. The traceability requirement does not necessitate showing that the conduct at issue was the proximate cause of the harm and instead adopts a standard "akin to" the "but-for" causation standard. *Weichsel v.*

*JP Morgan Chase Bank, N.A.*, 65 F.4th 105, 111 (3d Cir. 2023). But the sky is not the limit. The plaintiff cannot rely on "speculative inferences to connect his injury to the challenged actions of the defendant." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006) (citation modified); *see Clapper v. Amnesty Intl. USA*, 568 U.S. 398, 410, 414 (2013) (noting traceability cannot rely on a "speculative chain of possibilities"). Thus, when a plaintiff challenges government action even though the most direct source of the injury is a third party, there is traceability under only two circumstances. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014). First is when "government action [] permits or authorizes third-party conduct that would otherwise be illegal in the absence of the Government's action." *Id.* (quoting *Bloomberg L.P. v. CFTC*, 949 F. Supp. 2d 91, 116 (D.D.C. 2013)). And second is where there is "substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation . . . ." *Id.*

Here, third-party Lampert's is the most direct source of plaintiffs' injuries because it directly towed their car and failed to provide notice of how or where they could get it back. DI 1 ¶¶ 64-66. So to show traceability, the Fileses must demonstrate that one of the two forms of indirect traceability for government action applies. *See Aichele*, 757 F.3d at 366. They did not. First, there is no allegation that Media or Upper Providence did or could have authorized Lampert's to engage in towing services in Brookhaven. *See generally* DI 1.[3] And second, even accepting all facts alleged in the Fileses' complaint as true and drawing all reasonable inferences

[3] We take judicial notice that the towing and impoundment took place in Brookhaven. *See* Am. Compl., *Bradley v. Brookhaven Borough*, No. 2:25-cv-00155, DI 47 ¶¶ 80-81. In light of that allegation, the complaint's failure to identify a location at all, and plaintiffs' failure to dispute that the towing and impoundment occurred in Brookhaven, we conclude that no reasonable inference could support finding that those events occurred elsewhere.

in their favor, there is far more than "little doubt" that supervisory efforts by one of Lampert's municipal clients would have altered their behavior in an entirely separate municipality. Concluding that Lampert's would have behaved differently in Brookhaven based on training or supervision it received in Media or Upper Providence would require several speculative inferences regarding the content of the training, whether Lampert's would have adhered to it when operating in other jurisdictions, and whether Brookhaven would instruct Lampert's to abide by the same standards in Brookhaven as it did in Media and Upper Providence. Accordingly, the Fileses' alleged injury is not fairly traceable to Media or Upper Providence, and they lack standing to sue these defendants.

Because the Fileses lack standing to sue Upper Providence or Media, we will dismiss their claims against them for want of jurisdiction.

## V. CONCLUSION

We dismiss the Fileses's claims against Media Borough and Upper Providence Township (Counts I, II, III, and IV). Because these dismissals are for lack of subject matter jurisdiction, they are without prejudice. *See Figueroa v. Buccaneer Hotel Inc.,* 188 F.3d 172, 182 (3d Cir. 1999). Counts I, II, III, and IV are dismissed only as against Media Borough and Upper Providence Township and not as against the remaining defendants. We will deny Upper Providence's motion to dismiss for failure to state a claim as moot.